UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY JUDKA, | ) | CIVIL ACTION NO. 1:24-CV-531 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| DENNIS EMMEL, *et al.*, | ) | |
| Defendants | ) | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

*Pro se* Plaintiff Jeffrey Judka ("Plaintiff") brings this action alleging he was discriminated against by his employer on the basis of his religion. (Doc. 1). Plaintiff sues eight individuals seeking redress pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1983 and Pennsylvania Human Relations Act. *Id.* Defendants have filed a motion to dismiss. (Doc. 8). On April 24, 2024, the parties consented to proceed before a United States Magistrate Judge. (Doc. 7). For the reasons explained herein, Defendants motion will be granted and Plaintiff will be given leave to file an amended complaint.

## II.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff initiated this case on March 29, 2024, with the filing of a complaint. (Doc. 1). As Defendants, Plaintiff names:

(1)    Dennis Emmel, President Delta Cardiff Volunteer Fire Company;

(2)    John Derek Macomber, CEO/Vice President;

Page 1 of 23

(3)    Maxine Moul, Secretary;

(4)    Christopher Eberly, Board Member;

(5)    Gregory Moul, Board Member;

(6)    Chadwell Keesee, Board Member;

(7)    George Schruefer, Board Member; and

(8)    Michael Smith, Fire Chief.

(Doc. 1, pp. 2-3). Plaintiff's claims concern retaliatory employment action allegedly taken against him while working for the Delta Cardiff Volunteer Fire Company ("DCVFC").

Plaintiff alleges that in 2015, his coworkers at DCVFC became aware that he is Jewish. (Doc. 1, p. 6). From 2015 through June 2023, the President of "the Board" and Board Members witnessed or participated in derogatory comments about Judaism. *Id.* These comments included remarks that "only a Jew would think to say that," and "that Jew is perfect for getting us money." *Id.* Plaintiff was also asked on more than one occasion "how he felt about his ancestors killing Jesus." *Id.* In 2018, Plaintiff was injured and collected a settlement. *Id.* Chief Smith and several board members "stated, 'Just like a Jew to profit off of the injury.'" *Id.*

From 2015 through June 2023, Plaintiff reported the harassment to Board Secretary Maxine Moul, Christopher Eberly, George Schruefer, and the Board President. (Doc. 1, p. 6). No action was taken. *Id.* In 2022, Mike Smith took over

as Chief and created a hostile work environment that increased Plaintiff's risk of injury or death. *Id.*

On June 28, 2023, Plaintiff was accused of misconduct while performing his duties. (Doc. 1, p. 6). Defendants suspended Plaintiff for ten days and demoted him to the position of Fire Police Officer from First Police Lieutenant and barred him from voting or holding any position in the Fire Company for two years. *Id.* Plaintiff alleges this was done without a proper hearing or due process depriving him of his rights. *Id.* Plaintiff alleges Defendants retaliated against him on the basis of his religion. *Id.* Plaintiff also alleges he believes the Defendant are still retaliating against him. (Doc. 1, p. 5).

In his complaint, Plaintiff cites to *Harmony Volunteer Fire Co. & Relief Ass'n v. Commonwealth of Pennsylvania Hum. Rels. Comm'n* for the proposition that fire company volunteers are to be considered employees. (Doc. 1, p. 6). Plaintiff also cites to the Social Security Administrations Program Operating Manual System regulation section 02101.260 which explains the employment status of volunteer firefighters. *Id.*

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on January 25, 2024. (Doc. 1, p. 7). On February 13, 2024, Plaintiff received a right to sue letter from the EEOC. *Id.*

Plaintiff brings a claim under Title VII of the Civil Rights Act of 1964 for retaliation based on his religion. (Doc. 1, p. 4). He also indicates he is bringing a claim pursuant to 42 U.S.C. § 1983 for the violation of his civil rights. *Id.* Plaintiff does not specify which constitutional rights he is alleging were violated. *Id.* We construe the complaint as bringing a First Amendment religious discrimination claim and a Fourteenth Amendment procedural due process claim. (Doc. 1, pp. 4, 6). Finally, Plaintiff brings a claim pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. C.S. §§ 951-963. (Doc. 1, p. 4).

As relief, Plaintiff requests the reversal of all charges and suspensions concerning him, the removal of all DCVFC members in a position of authority related to this complaint, "[a] lifetime ban on holding a position of authority within the [DCVFC]," costs of suit, and a stipend of $10.00 per year for fifteen years to be paid to Plaintiff. (Doc. 1, p. 7).

On April 26, 2024, Defendants filed a motion to dismiss for failure to state a claim. (Doc. 8). On May 10, 2024, Defendants file their brief in support. (Doc. 9). On May 21, 2024, Plaintiff filed his brief in opposition to Defendants' motion. (Doc. 11). On June 4, 2024, Defendants filed a reply brief. (Doc. 12).

In response to Defendants' reply brief, on July 3, 2024, Plaintiff filed a "motion for leave of court to file demurrer to motion." (Doc. 13). On July 18,

2024, Defendants filed a brief in opposition. (Doc. 15). On July 22, 2024, Plaintiff filed a reply brief. (Doc. 16). Both motions are ripe and ready for resolution.

## III. LEGAL STANDARD FOR MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER RULE 12(B)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE

Rule 8 of the Federal Rules of Civil Procedure explains that to state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."[1] This standard "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[2] Thus, a complaint that contains only "labels and conclusions," or a "formulaic recitation of the elements of a cause of action" is insufficient.[3]

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted."[4] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[5] Facial plausibility is achieved "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

---

[1] Fed. R. Civ. P. 8(a)(2).
[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted).
[3] *Id.*
[4] Fed. R. Civ. P. 12(b)(6).
[5] *Iqbal*, 556 U.S. at 678.

misconduct alleged."[6] Plausibility does not require probability but the litigant must show "more than a sheer possibility that a defendant has acted unlawfully."[7] Facts "merely consistent with" liability do not satisfy this standard.[8] To state a claim, a plaintiff must plead "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]."[9] In addition, "[d]etermining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[10]!

At the motion to dismiss stage, the court accepts the complaint's factual allegations as true, but the court does not accept a plaintiff's legal conclusions.[11] Courts also must view the factual allegations in the light most favorable to the plaintiff.[12] "In evaluating a motion to dismiss, a court may consider the facts

---

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556  internal quotation marks omitted)).

[10] *Iqbal* at 679.

[11] *Id.* at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

[12] *Mator v. Wesco Distribution, Inc.*, 102 F.4th 172, 178 (3d Cir. 2024).

alleged on the face of the complaint, as well as documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[13]

The federal pleading standard just described requires that district courts conduct the following analysis when addressing a motion to dismiss a complaint:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [*Iqbal*, 129 S.Ct. at 1949]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*, 515 F.3d at 234–35.[14]

A *pro se* litigant, however, is entitled to have their complaint liberally construed. This requires that we hold the complaint to a less stringent standard than a pleading drafted by a licensed attorney.[15] "Liberal construction of *pro se* pleadings means paying attention to what the litigant has alleged and using common sense."[16] The Court may "apply the relevant legal principle even when

---

[13] *Bishop v. Univ. of Scranton*, No. 3:22-CV-01831, 2025 WL 823253, at *2 (M.D. Pa. Mar. 14, 2025) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)) (internal quotation marks omitted).

[14] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

[15] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

[16] *Gindraw v. Sanford*, No. 3:24-CV-65-KAP, 2024 WL 3179781, at *2 (W.D. Pa. June 26, 2024).

the complaint has failed to name it," but cannot supply what plaintiff has not alleged or imagine that unpleaded facts exist.[17]

## IV.    ANALYSIS

### A.    PLAINTIFF'S "MOTION FOR LEAVE OF COURT TO FILE DEMURRER TO MOTION"

Plaintiff has filed a "motion for leave of Court to file demurrer to motion." (Doc. 13). We interpret this as a request for leave to file a sur reply brief as Plaintiff writes that he "asks for permission to respond to Defendants' reply brief." *Id.* Plaintiff alleges that Defendants reply brief "has conferred many inaccurate and misleading information to the court." (Doc. 13, ¶ 2). As an example, Plaintiff alleges that, contrary to the reply brief, Defendants were notified of suit within the ninety day right to sue period. (Doc. 13, ¶ 3). Defendants oppose the motion. (Doc. 15).  In response to Defendants' opposition Plaintiff cites to Rule 7.1 of the Eastern District of Pennsylvania's Local Rules and Federal Rule of Civil Procedure 56 which governs motions for summary judgment. (Doc. 16). Plaintiff asserts that he is prepared to provide the Court with proof that DCVFC was properly named as a defendant and served. *Id.*

---

[17] *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)); *Gindraw*, 2024 WL 3179781, at *2.

Defendants do not argue that they were not notified of this suit within the ninety day right to sue period. Rather, they point out that DCVFC was not named as a defendant in this suit. (Doc. 12, p. 2). Further, a Local Rule from the Eastern District of Pennsylvania and Federal Rule of Civil Procedure "56(3)" have no bearing on this case. Plaintiff provides no other support for his request to file a sur reply brief. Moreover, Plaintiff will be given leave to file an amended complaint. Accordingly, his motion (Doc. 13) will be denied.

### B. PLAINTIFF'S TITLE VII CLAIM

Plaintiff brings a claim pursuant to Title VII of the Civil Rights Act of 1964, alleging that Defendants retaliated against him on the basis of his religion. Defendants argue that individual defendants cannot be held liable under Title VII and so Plaintiff's Title VII claim must be dismissed. (Doc. 9, pp. 3-4). Plaintiff responds that he is suing the Defendants in their official capacities and so his Title VII claims against them may proceed. (Doc. 11, pp. 3-4). Defendants reply that the complaint does not specify that Plaintiff is suing Defendants in their official capacities. (Doc. 12, p. 1). They assert that the factual allegations in the complaint allege only personal discriminatory conduct. *Id.* They also note that the case law Plaintiff relies on is from the Fifth Circuit. (Doc. 12, p. 2). They argue that official capacity suits are to be treated as a suit against the entity and that DCVFC is a private entity. *Id.* They argue that official capacity claims are inapplicable against

Page 9 of 23

individuals when, as here, the entity is also susceptible to suit. *Id.* They note Plaintiff has not sued DCVFC.

We agree with Defendants that individuals, whether sued in their individual or official capacities, are not liable under Title VII. It is well established that individual employees are not liable under Title VII.[18] We do not find Plaintiff's citation to Fifth and Eleventh Circuit case law to be persuasive, especially where the youngest of that case law is 34 years old. As to Plaintiff's attempt to save his Title VII claims against Defendants by arguing he sues them in their official capacities, first, we agree with Defendants that Plaintiff does not indicate in his complaint that he sues them in their official capacities and that Plaintiff only alleges personal discriminatory conduct taken by Defendants. Plaintiff cannot amend his complaint through his brief in opposition.[19] Second, even to the extent we did construe the complaint as bringing a Title VII claim against Defendants in their official capacities, we do not believe Title VII permits official capacity claims.

> The progeny of the official/individual distinction in the Title VII context can be traced back to pre-*Sheridan* cases allowing Title VII claims to proceed against supervisors in their official capacity as

---

[18] *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1078 (3d Cir. 1996).

[19] *Commonwealth of Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (quoting *Car Carriers Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).

"agents" of the employer. *See Verde v. City of Phila.*, 862 F. Supp. 1329, 1334–35 (E.D. Pa. 1994); *Doe v. William Shapiro, Esquire, P.C.*, 852 F. Supp. 1246, 1252 (E.D. Pa. 1994); *Timmons v. Lutheran Children and Family Serv. of Eastern Pa.*, No. Civ. A. 93–4201, 1993 WL 533399, at \*4–5 (E.D. Pa. Dec. 17, 1993). The logic in these early cases reads the definition of employer in Title VII literally to allow suits against supervisors in their official capacity as "agents" of the employer being sued. In some instances, in reaching this conclusion the courts relied on an interpretation of Title VII allowing suits against individual supervisors, reasoning that was later overturned by *Sheridan*. *See Doe*, 852 F. Supp. at 1252 ("[C]ourts reason that individual defendants are covered by the statute because they exercise authority conferred upon them by the employer; thus suits . . . should be against them in their official capacities."). The reasoning provided in these cases is not persuasive post-*Sheridan* which explicitly barred claims against supervisors in their individual capacity. Nor does the reasoning align with the Supreme Court's consistent direction to construe the "agent" provision in the definition of employer as a way to determine the liability of the employer.[20]

Since *Sheridan*, "numerous courts in this Circuit have held that Title VII does not permit claims against supervisors in their official capacities."[21]

---

[20] *Thourot v. Monroe Career & Tech. Inst.*, No. 3:14-1779, 2016 WL 6082238, at \*6 (M.D. Pa. Oct. 17, 2016).

[21] *Stallone v. Camden Cnty. Tech. Sch. Bd. of Educ.*, No. 12-7356 RBK/JS, 2013 WL 5178728, at \*7 (D.N.J. Sept. 13, 2013) ("*See, e.g., Schanzer v. Rutgers Univ.*, 934 F.Supp. 669, 678 n.12 (D.N.J. 1996) (declining to follow *Verde* and holding that "[i]f the defendant is not plaintiff's employer, ... it is irrelevant whether that person was acting in an official or individual capacity, for a Title VII suit may not be properly maintained against the individual."); *Behrens v. Rutgers Univ.*, No. 94–358(JBS), 1996 U.S. Dist. LEXIS 22311, 1996 WL 570989 at \*8 n.10 (D.N.J. Mar. 29, 1996) (declining to follow *Verde* and "find[ing] no basis for this distinction between 'official' and 'individual' suits in the statutory language of Title VII"); *Watson v. Dep't of Servs. for Children, Youths & Their Families Delaware*, No. 10–978(LPS), F.Supp.2d, 2013 U.S. Dist. LEXIS 42203, 2013 WL 1222853 at \*4 (D.Del. Mar.26, 2013) ("The Title VII claims against DSCYF

"[D]espite a lack of Third Circuit precedent on the permission of official capacity suits against individuals under Title VII," we find "the reasoning persuasive in the cases dismissing official capacity claims against individual defendants and agree[] that Title VII provides for liability against employers, not supervisors."[22] Thus, Plaintiff cannot maintain a Title VII claim against Defendants even if he sues them in their official capacities.[23] Accordingly, Plaintiff's Title VII claim against the individual Defendants will be dismissed.

## C.   PLAINTIFF'S 42 U.S.C. § 1983 CLAIMS

Plaintiff also brings claims pursuant to 42 U.S.C. § 1983 alleging that Defendants violated his Fourteenth Amendment procedural due process rights. (Doc. 1, pp. 5-6). "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights,

---

employees in their official capacities are actually claims against the DSCYF . . . Accordingly, [plaintiff]'s Title VII claims against the DSCYF employees in their official capacities will be dismissed."); *Foxworth v. Pa. State Police*, No. 03–6795, 2005 U.S. Dist. LEXIS 6169, 2005 WL 840374, at *4 (E.D.Pa. Apr.11, 2005) ("Because the only proper defendant in a Title VII case is the 'employer,' pursuing such claims against individuals in their official capacities would be redundant").").

[22] *Combs v. Gopel*, No. 23-CV-6502 (EP) (CLW), 2025 WL 325766, at *3 (D.N.J. Jan. 29, 2025) (quoting *Stallone v. Camden Cnty. Tech. Sch. Bd. of Educ.*, No. 12-7356, 2013 WL 5178728, at *7 (D.N.J. Sept. 13, 2013)) (internal quotation marks omitted).

[23] *See Melton v. SEPTA*, No. 23-1260, 2024 WL 4292970 (E.D. Pa. Sept. 25, 2024); *Pascal v. V.I. Gov't Hosps. & Health Facilities Corp.*, No. 2019-79, 2021 WL 9569403, at *4 (D.V.I. Sept. 16, 2021), *report and recommendation adopted*, No. 3:19-CV-0079, 2022 WL 4494190 (D.V.I. Sept. 28, 2022).

privileges, or immunities secured by the Constitution or laws of the United States."[24] To state a claim under § 1983, a plaintiff must establish: "(1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States."[25]

In their Motion to Dismiss, Defendants assert that Plaintiff has failed to allege facts that, if proven, would support the conclusion that any Defendants were acting under the color of state law when making the internal disciplinary decision regarding Plaintiff. (Doc. 9, pp. 5-7). Defendants argue that in determining whether state action exists, the state must exercise control over the particular conduct giving rise to Plaintiff's alleged constitutional deprivation, which in this case is the internal disciplinary decision regarding Plaintiff. *Id.* Defendants assert that while the Third Circuit has held that volunteer fire companies and their members may be deemed state actors under some circumstances involving firefighting activities because fire protection is traditionally a government function, the Third Circuit has not held that volunteer fire companies are state actors as a matter of law. *Id.* They assert that internal disciplinary decisions of a volunteer fire company do not

---

[24] *Shuman v. Penn Manor Sch. Dist.*, 422 F.3d 141, 146 (3d Cir. 2005) (citing *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000)).

[25] *Rosario v. Cook*, No. 3:22-0866, 2024 WL 1077320, at *2 (M.D. Pa. Mar. 12, 2024) (citing *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005)).

implicate state action even if the organization is heavily involved in a state function such as fire prevention. *Id.*

Plaintiff argues that Defendants' arguments are in direct contradiction of established case law and cites to numerous cases he believes support his assertion. (Doc. 11, pp. 4-8). Plaintiff also asserts that by accepting federal funding, Defendants agreed to comply with all federal statutes and regulations relating to nondiscrimination. (Doc. 11, p. 7). Plaintiff also alleges for the first time that "the Delta Cardiff Vol. Fire. Co and the state governing authority (Delta Borough) are the same individuals that attend meetings in the exact location meeting the frameworks to determine whether state action exists" and that "five of the seven voting Delta Borough Council members are members of the fire company, and four of the defendants are Delta Cardiff Vol. Fire. Company board members." (Doc. 11, p. 5).

In response, Defendants argue that Plaintiff cannot amend his complaint to assert new facts through his brief in opposition. (Doc. 12, p. 3). They argue further that even if these statements were to be considered by the Court, there is no allegation that any of the Defendants were acting in their capacity as Borough officials or that the Borough otherwise participated in the Fire Company's internal disciplinary matters in general or as related to Plaintiff. (Doc. 12, pp. 3-4). Defendants acknowledge case law Plaintiff cites, but argue it is differentiated

because whether there is state action is analyzed by reference to the particular conduct at issue. (Doc. 12, p. 4). They assert that courts examining the issue have almost uniformly held that that internal disciplinary decisions of a volunteer fire company do not implicate state action. *Id.*

We agree with Defendants that Plaintiff fails to state a claim under 42 U.S.C. § 1983 because he has not pleaded Defendants were acting under the color of state law when they suspended and demoted him.

Whether a defendant acted under the color of state law is a threshold issue in a § 1983 case. This is because § 1983 expressly limits the cause of action it creates to conduct committed by an individual acting under the color of state law.[26]

> Although there is no "simple line" between state and private actors, *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001), we have explained that "[t]he principal question at stake is whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Leshko*, 423 F.3d at 339 (internal quotation marks and citation omitted). To answer that question, we have outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state"; (2) "whether the private party has acted with the help of or in concert with state officials;" and (3) whether "the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Mark*, 51 F.3d at 1142 (other alterations, internal quotation marks and citations omitted). Under any test, "[t]he inquiry is fact-specific." *Groman v.*

---

[26] 42 U.S.C. § 1983.

*Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir.1995); *see also Crissman v. Dover Downs Entm't Inc.*, 289 F.3d 231, 234 (3d Cir. 2002) (en banc) (noting that "the facts are crucial").[27]

"[T]he focus of our inquiry is not on whether the state exercises control over a putative state actor as a general matter, but whether the state has exercised control over the particular conduct that gave rise to the plaintiff's alleged constitutional deprivation."[28]

Plaintiff cites to *McColligan v. Pennsylvania R. Co.*; *Sweet v. Pennsylvania Lab. Rels. Bd., Washington Cnty.*; *Rodgers v. Washington Cnty. Inst. Dist.*; and ! *Jones v. Unemployment Comp. Bd. of Rev.*, asserting that these cases directly conflict with Defendants' argument that internal disciplinary actions of a private volunteer organization do not become state action even if the organization itself is heavily involved in a state function. (Doc. 11, pp. 6-7). However, these cases do not concern whether the conduct complained of was state action for § 1983 purposes. Instead, these cases focus on defining when an employer-employee relationship exists.[29] The issue here is not whether an employer-employee relationship exists and therefore these cases are inapposite to this case. Plaintiff

---

[27] *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009).

[28] *Id.* at 649.

[29] *McColligan v. Pennsylvania R. Co.*, 63 A. 792 (Pa. 1906); *Sweet v. Pennsylvania Lab. Rels. Bd., Washington Cnty.*, 322 A.2d 362 (Pa. 1974); *Rodgers v. Washington Cnty. Inst. Dist.*, 37 A.2d 610 (Pa. 1944); *Jones v. Unemployment Comp. Bd. of Rev.*, 60 A.2d 568 (Pa. Super. 1948).

cites to *Harmony Volunteer Fire Co. & Relief Ass'n v. Commonwealth of Pennsylvania Hum. Rels. Comm'n*, however this case is likewise inapposite to the present case as it held that a volunteer fire company was an employer for PHRA purposes.[30] *Id.* Whether DCVFC is an employer for PHRA purposes is irrelevant to whether Defendants were acting under the color of state law at the time they retaliated against Plaintiff. Plaintiff cites to *Buchanan v. Littlehales*, but again, this case does not concern whether there was state action for § 1983 purposes. *Id.* In *Buchanan*, the issue before the court was "whether volunteer fire companies, while serving alcoholic beverages for profit, are local government agencies immune from liability pursuant to the [1980 Immunity] Act," not whether state action was present for § 1983 purposes.[31] Plaintiff also cites to *Wilson v. Dravosburg Volunteer Fire Dep't No. 1*. *Id.* But, in *Wilson*, the court found that "[v]olunteer fire companies, in the performance of public firefighting duties, exist as an entity acting on the behalf of local government units," and that volunteer fire companies are entitled to governmental immunity under the 1980 Immunity Act.[32] Like *Buchanan*, *Wilson* does not concern whether state action was present for § 1983 purposes. Accordingly, we are not persuaded by the case law Plaintiff cites.

---

[30] *Harmony Volunteer Fire Co. & Relief Ass'n v. Commonwealth of Pennsylvania Hum. Rels. Comm'n*, 459 A.2d 439 (Pa. Commw. Ct. 1983).

[31] *Buchanan v. Littlehales*, 606 A.2d 567, 424 (Pa. Commw. Ct. 1992).

[32] *Wilson v. Dravosburg Volunteer Fire Dep't No. 1*, 516 A.2d 100, 102 (Pa. Commw. Ct. 1986).

However, and as Defendants acknowledge, "Courts have consistently deemed Pennsylvania fire companies state actors for § 1983 purposes. In *Mark v. Borough of Hatboro*, the Third Circuit so concluded in large part because Pennsylvania courts view fire-fighting as a public duty and treat volunteer fire companies for all relevant purposes as state entities."[33] That said, "[w]hat *Mark* does not establish . . . is that all Pennsylvania fire companies are state actors as a matter of law. Such an overbroad construction belies United States Supreme Court and Third Circuit jurisprudence establishing the state action inquiry as circumstance-specific and fact-sensitive[.]"[34]

Here, Plaintiff contests the internal disciplinary decision of the DCVFC relative to the performance of his duties. (Doc. 1, p. 6). We conclude this is not state action. We are persuaded by the analysis of the Honorable Joy Flowers Conti:

> The actual conduct that forms the basis for the claim must be "fairly attributable to the State." *Rendell-Baker* [*v. Kohn*], 457 U.S. [830] 838 [1982]. . . .
>
> . . . .
>
> In *Rendell-Baker*, the Supreme Court held there was no "state action" because "the decisions to discharge the petitioners were not compelled or even influenced by any state regulation." *Id.* . . .

---

[33] *Erdley v. William Cameron Engine Co.*, No. 4:17-CV-2068, 2018 WL 4354470, at *2 (M.D. Pa. Sept. 12, 2018) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1148 (3d Cir. 1995)) (footnotes omitted) (internal quotation marks omitted).

[34] *Erdley*, 2018 WL 4354470, at *3.

. . . .

These legal principles have been applied in the specific context of
termination of a volunteer's membership in a VFD. In *Dufresne*, the
court concluded there was no "state action" because allegations about
termination of a volunteer firefighter's membership and defamation
were not related to the public function of firefighting, rejected the
plaintiff's request to take discovery, and granted a motion to dismiss
the § 1983 claims. *Dufresne* [*v. Camden-Wyoming Fire Co. Inc.*], [No.
K19C-03-008,] 2020 WL 2125797[,] at *13 [(Del. Super. Ct. May 5,
2020)]. In *Ehart*, after discussing *Rendell-Baker*, the court concluded
that a volunteer firefighter failed to establish that defendants acted
under color of state law in terminating his membership. *Ehart* [*v.
Odessa Fire Co.*], [No. 02-1618-SLR,] 2005 WL 348311[,] at *3 [(D.
Del. Feb. 2, 2005)]; *accord Ponsford v. Mercyhurst Univ.*, No. 19-
217, 2020 WL 1049180, at *3 (W.D. Pa. Mar. 4, 2020) (dismissing
§ 1983 claims) ("the state, even if arguably involved in Defendant's
day-to-day operation, played absolutely no role in her termination.").

. . . .

In this case, Papa failed to allege any plausible basis for "state action"
with respect to the conduct at issue in the amended complaint. The
actions of which she complains occurred within the scope of her
membership obligations in the Neshannock VFD. The crux of her
§ 1983 claims is that the Neshannock VFD's internal disciplinary
procedures were improper. As the Supreme Court made clear
in Rendell-Baker, internal disciplinary decisions of a private volunteer
organization do not become state action -- even if the organization
itself is heavily involved in a state function.

The court concludes that the § 1983 claims are subject to dismissal at
this stage of the case. *See Groman v. Township of Manalapan*, 47 F.3d
628, 638 (3d Cir. 1995) ("The color of state law element is a threshold
issue; there is no liability under § 1983 for those not acting under
color of law.") (citing *Versarge*, 984 F.2d at 1363); *Showell v. Acorn
Hous. Corp. of Conn.*, No. 97-1200, 1997 WL 597897, at *4 (E.D. Pa.
Sept. 17, 1997) (dismissal is proper under Rule 12(b)(6) where § 1983
complaint did not allege that a government entity participated even

minimally in a private actor's decision to terminate plaintiff's employment) (citations omitted); *Schneider v. Arc Of Montgomery Cnty.*, 497 F.Supp.2d 651, 659 (E.D. Pa. 2007) ("Numerous courts, including this Court, have granted motions to dismiss section 1983 actions because the defendants were not state actors.") (citations omitted). Based upon the factual allegations in the amended complaint and drawing all reasonable inferences in favor of Papa, the court does not perceive any plausible state involvement in the Neshannock VFD's internal decision to terminate Papa's membership. Papa does not allege that the membership decision was based upon some regulation, rule of conduct or policy put forth by Pennsylvania. Viewing the allegations of the amended complaint and all reasonable inferences therefrom in the light most favorable to Papa, her membership termination is not fairly attributable to the state. The § 1983 claims must be dismissed.[35]

As in *Papa*, Plaintiff's complaint, construed in light most favorable to him, does not allege any factual allegations that plausibly plead state involvement in the decision to suspend and demote him.[36] Again, "[a]s the Supreme Court made clear in *Rendell-Baker*, internal disciplinary decisions of a private volunteer organization do not become state action -- even if the organization itself is heavily involved in a state function."[37] Nothing in the complaint alleges that Defendants acted with the help of or in concert with a state official when making their decision. Nothing in the complaint alleges the state is so intertwined with the DCVFC that it must be

---

[35] *Papa v. Neshannock VFD*, No. 21-77, 2021 WL 1986418, at *4-5 (W.D. Pa. May 18, 2021).

[36] Plaintiff cannot amend his complaint and add facts he believes support a finding of state action in his brief in opposition, and those facts presented for the first time in his brief in opposition will not be considered. *Zimmerman*, 836 F.2d at 181.

[37] *Papa*, 2021 WL 1986418, at *5.

recognized as a joint participant. Nothing in the complaint alleges that, in making their internal disciplinary decision, Defendants exercised powers traditionally the exclusive prerogative of the estate. And nothing in the complaint alleges the internal disciplinary decision was "based upon some regulation, rule of conduct or policy put forth by Pennsylvania."[38] Because Plaintiff has not pleaded that Defendants were state actors when making the internal disciplinary suspension and demotion decision, he fails to state a § 1983 claim, and those claims will be dismissed.

### D.    PLAINTIFF'S PHRA CLAIMS

Finally, Plaintiff brings a state law claim against Defendants under the Pennsylvania Human Relations Act ("PHRA"). Defendants argue that if the Court dismisses all of Plaintiff's federal claims, it should decline to exercise supplemental jurisdiction over Plaintiff's PHRA claim and dismiss that claim. In response, Plaintiff cites to a 2019 United States Supreme Court case where the Court held that Title VII's EEOC charge-filing requirement is not jurisdictional.[39] (Doc. 11, pp. 8-9). Defendants assert this case is inapposite to the PHRA jurisdictional issue they raise in their Motion. (Doc. 12, p. 5).

---

[38] *Id.*

[39] *Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541 (2019).

Again, we agree with Defendants. As Defendants point out, the case Plaintiff relies on in support of his argument that his PHRA claim should not be dismissed is inapplicable. The issue here is not whether Title VII's charge-filing requirement is jurisdictional. Indeed, Title VII is not at issue with respect to Plaintiff's PHRA claim. The issue here is whether, in the absence of any federal claim over which we have original jurisdiction, we should exercise supplemental jurisdiction and decide Plaintiff's state law PHRA claim.

> The Court of Appeals for the Third Circuit has instructed that a district court "*must* decline to decide the pendent state claims" after the claims over which the district court has original jurisdiction have been resolved "unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Neelu Pal v. Jersey City Med. Ctr.*, 658 F. App'x 68, 75 n.6 (3d Cir. 2016) (emphasis in original) (internal quotation marks and citations omitted).[40]

Here, given the early stage of this proceeding, there is no affirmative justification for retaining jurisdiction over Plaintiff's PHRA claim. Accordingly, we will dismiss Plaintiff's PHRA claim without prejudice.

### E.    LEAVE TO AMEND

If a civil rights complaint is subject to dismissal for failure to state a claim, "a district court must permit a curative amendment unless such an amendment

---

[40] *Severino-Mota v. Lidwell*, No. 3:22-CV-2030, 2024 WL 69154, at *5 (M.D. Pa. Jan. 5, 2024).

would be inequitable or futile."[41] In this case we cannot say that amendment would be inequitable or futile. Defendants make no arguments that amendment would be inequitable and it appears to the Court that Plaintiff could potentially amend his complaint to state a claim. Therefore, we will grant Plaintiff leave to file an amended complaint.

## V.    CONCLUSION

Accordingly, it will be ordered that:

(1)    Plaintiff's motion to for leave to file a demurrer (Doc. 13) will be DENIED.

(2)    Defendants' motion to dismiss (Doc. 8) will be GRANTED.

(3)    Plaintiff's complaint (Doc. 1) will be DISMISSED without prejudice.

(4)    Plaintiff will be given leave to file an amended complaint.

(5)    An appropriate order will issue.


Date: May 30, 2025                          BY THE COURT

                                            _s/William I. Arbuckle_
                                            William I. Arbuckle
                                            U.S. Magistrate Judge


---

[41] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).